IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **JOSEPH PATRICK MOSHER, #28225-078** § | | |
| § | | |
| VS. § | **CIVIL ACTION NO. 4:20cv808** | |
| § | **CRIMINAL ACTION NO. 4:18cr218** | |
| **UNITED STATES OF AMERICA** § | | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Movant Joseph Patrick Mosher, with the assistance of counsel, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, asserting violations concerning his Eastern District of Texas, Sherman Division conviction. The motion was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

**I. BACKGROUND**

In September of 2018, Movant served as a host parent through a foreign exchange program. A 16-year-old French national ("MV1") reported to school officials and his parents that Movant acted inappropriately with him. MV1 found hidden cameras in the house. MV1 also reported that Movant would scratch his back, but would move his hands too far down toward MV1's buttocks. Movant made MV1 watch a pornographic movie with him and had repeated discussions about sex. After the Carrollton Police Department obtained a search warrant for Movant's residence, they seized a HD night-vision camera from Movant's bedroom and a number of other hidden cameras designed to look like thumb drives, key fobs, alarm clocks, and AC wall adapters. They also seized micro SD cards, a

1

hard drive, and a computer. A forensic review showed forty-eight recordings of MV1. The recordings show MV1 nude and engaging in sexually explicit conduct, as defined by 18 U.S.C. §2256. Crim. ECF #39 at 6.

Investigators learned that Movant had previously hosted six other teenaged males from countries around the world. Crim. ECF #39 at 8. Recorded videos of four of the teenagers were found on Movant's electronic devices. *Id*. They were also filmed nude and while engaging in sexually explicit conduct. Movant possessed pornography images and videos of other children. Investigators located online video chats between Movant and children including Movant masturbating while a child displayed his penis and a fourteen-year-old male ("MV2") masturbating under Movant's direction. *Id*.

Movant was charged with sexual exploitation of children and attempt, in violation of 18 U.S.C. §§2251(a) and (e). On March 12, 2019, Movant pled guilty to Counts Two and Three of the First Superseding Indictment pursuant to a written Plea Agreement. Crim. ECF #31. A Change of Plea Hearing was held on March 20, 2019, in which Movant's Plea Agreement was entered under seal, as well as the Factual Basis. *See* Crim. ECF#29. In the Factual Basis, Movant stipulated to the following, among other things:

> Mosher knowingly employed, used, persuaded, inducted, enticed, and coerced MV1 to engage in sexually explicit conduct for the purpose of creating visual depictions of such conduct.
>
> Mosher admits that, at the time of the offense, MV1 was a minor who had not yet attained the age of eighteen years old and that he had assumed a guardianship role for MV1 and that MV1 was under his custody, care, and supervisory control.
>
> Mosher knowingly secreted hidden cameras throughout his home, including in locations where MV1 was likely to be nude and where MV1 would have an expectation of privacy.
>
> Mosher admits that his cameras captured MV1 engaged in sexually explicit conduct, including masturbation and the lascivious exhibition of MV1's genitals.

> Mosher stored and maintained those videos on SD cards and cellular phones that he owned and possessed, and the devices traveled in interstate and foreign commerce. Mosher admitted that he knowingly employed, used, persuaded, induced, enticed, and coerced MV2 to engage in sexually explicit conduct for the purpose of transmitting a live visual depiction of such conduct.
>
> Mosher admitted that, at the time of the offense, he knew and had reason to believe that MV2 was a minor who had not yet attained the age of sixteen.
>
> Mosher admits that MV2 moved a web camera, at Movant's direction, during the live transmission to lasciviously display his genitals to the camera and to depict MV2 masturbating.
>
> Mosher used his electronic devices to receive the live transmission of MV2 engaged in sexually explicit conduct and to capture and save that recording to his hard drive.

*See* Crim. ECF #33. On October 3, 2019, the District Court's sentence of 360 months' imprisonment was entered in the record. Crim. ECF #49. Movant did not file an appeal, but filed the instant § 2255 motion on October 19, 2020 (Dkt. #1).

In the instant § 2255 motion, Movant claims that he is entitled to relief based on ineffective assistance of counsel. The Government filed a Response, asserting Movant is not entitled to any relief, to which Movant filed a Reply. On March 7, 2023, an evidentiary hearing was conducted to determine whether Counsel advised Movant concerning an appeal. For the reasons discussed below, the Court recommends that Movant's § 2255 motion be denied.

## II. STANDARD FOR FEDERAL HABEAS CORPUS PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other."

*United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (*citations omitted*). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). The role of Section 2255 has been defined by the Fifth Circuit as follows:

> Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). "Section 2255 does not reach errors of constitutional or jurisdictional magnitude that could have been reached by a direct appeal." *Id.* Similarly, "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant pled guilty pursuant to a written Plea Agreement, but reserved for review a sentence exceeding the statutory maximum as well as claims of ineffective assistance of counsel. Movant does not assert he received a sentence exceeding the statutory maximum, but raises ineffective assistance of counsel claims.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697. When a movant pleads guilty, as in this case, he must also show that, but for trial counsel's alleged deficient performance, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

**A.** **Guilty Plea**

Movant claims Counsel was ineffective because he failed to "properly advise [him] of the advantages and disadvantages of pleading guilty versus proceeding to trial." (Dkt. #1 at 5). He also claims that Counsel should have advised him, prior to pleading guilty, that "the plea agreement and factual basis alone would result in a minimum Guidelines range of 210 to 262 months imprisonment." (Dkt. #1-1 at 8-10). Movant asks the Court to consider the "possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as

5

misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally adequate basis for imprisonment." (Dkt. #1-1 at 11 (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 (1997)).

The Fifth Circuit has upheld the informed and voluntary waiver of post-conviction relief in *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). The Fifth Circuit held that a waiver might not be enforceable against a § 2255 movant who claims that ineffective assistance of counsel rendered that waiver unknowing or involuntary. *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). In *United States v. White*, 307 F.3d 336 (5th Cir. 2002), the Fifth Circuit held that an ineffective assistance of counsel claim raised in a § 2255 proceeding survives a waiver only when the claimed assistance directly affected the validity of that waiver or the plea itself. A movant must show that he did not understand the nature of a constitutional protection he was waiving or that he had "such an incomplete understanding of the charges against him that this plea cannot stand as an admission of guilt." *James*, 56 F.3d at 666. Thus, if a defendant understands the nature of the charges against him and the consequences of his plea, yet voluntarily chooses to plead guilty, the plea must be upheld on federal review. *Diaz v. Martin*, 718 F.2d 1372, 1376-77 (5th Cir. 1983).

A review of Movant's underlying criminal case shows that his Plea Agreement contains the following waiver:

> Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceedings, including, but not limited to, a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory maximum. The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel.

Crim. ECF #31 at 9. The Plea Agreement also states:

> The defendant has thoroughly reviewed all legal and factual aspects of this case with defense counsel and is fully satisfied with defense counsel's legal representation. The defendant has received satisfactory explanations from defense counsel concerning each paragraph of this plea agreement, each of the defendant's rights affected thereby, and the alternatives to entering a guilty plea. After conferring with counsel, the defendant concedes guilt and has concluded that it is in the defendant's best interest to enter this agreement rather than proceeding to trial.

Crim. ECF #31at 10. Movant's signed Plea Agreement also states:

> I have read or had read to me this plea agreement and have carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree to it.

Crim. ECF #31at 11. Finally, Movant stated in his Plea Agreement that the "plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises other than those set forth in this agreement." Crim. ECF #31at 9. Consequently, any allegation that the guilty plea was not knowingly or voluntarily made is contradicted by Movant's signed Plea Agreement.

Furthermore, a review of the transcript from Movant's Change of Plea Hearing shows that he had a full and fair opportunity to discuss the facts of the case and any defenses he may have with Counsel. Crim. ECF #63 at 8-9. The Fifth Circuit has held that solemn declarations in open court carry a strong presumption of verity. *United States v. Lampazianie,* 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Allison*, 431 U.S. at 73-74). Where the record establishes that the defendant understood the nature of the charge against him and the consequences of his act, the rudimentary demands of a fair proceeding and a knowing and voluntary plea are satisfied. *Wright v. United States*, 624 F.2d 557, 561 (5th Cir. 1980).

At his Change of Plea Hearing, Movant testified that he had the opportunity to discuss the federal sentencing guidelines with Counsel and how the guidelines might be applied to his case. Crim. ECF #63 at 11-12. Movant understood that he was stipulating to a base offense level as well

as two specific enhancements for the commission of a sexual act or sexual contact, and that he was in the role of a parent/guardian or that the child was in his custody, care, or control. Crim. ECF #63 at 15. Movant understood he was waiving the right to appeal or seek collateral review except for the very limited two circumstances – a sentence exceeding the statutory maximum and a claim of ineffective assistance of counsel. Crim. ECF #63 at 16-17, 19-20. He also said that his waiver was voluntary, and that he understood each and every paragraph of the Plea Agreement. Crim. ECF #63 at 21-22.

In spite of Movant's allegations that had he known the extent of the sentence he was facing, he would have gone to trial, he fails to support his claim, and conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross*, 694 F.2d at 1011-12. The Plea Agreement stated that Movant could be imprisoned for not less than fifteen years, and not more than thirty years – for each charge. Crim. ECF #31 at 2. Furthermore, at his Change of Plea Hearing, the Government advised Movant that each of the counts carries a mandatory minimum term of imprisonment of fifteen years with a maximum term of imprisonment of thirty years. Crim. ECF #63 at 9. This could have resulted in a sentence of ninety years based on the three charges had he proceeded to trial and been found guilty of all three. Movant also stated that he understood that his sentence will be determined by the federal district judge. Crim. ECF #63 at 12. After acknowledging that he had discussed how the guidelines might affect his sentence with his attorney, he said he fully understood that the guidelines are not mandatory, that the district judge can depart from the guidelines, and the district judge could sentence him to the statutory maximum. Crim. ECF #63 at 12-13. Movant understood that the guideline range could not be determined until after the completion of the written Presentence Report ("PSR"). Crim.

ECF #63 at 13. Movant affirmed that any estimate he had been given concerning his sentence was just that - an estimate. *Id.* He also said that he discussed "each and every" paragraph of the Plea Agreement and that he fully understood it. Crim. ECF #63 at 13-14. The Plea Agreement also stipulated that Movant's offenses involved the exploitation of additional minor children and that each child would be treated as a separate count for purposes of grouping and guidelines calculations. Crim. ECF #31 at 4. At his Change of Plea Hearing, the Court discussed this paragraph in detail, and Movant stated he understood it. Crim. ECF #63 at 15.

As shown, the record contradicts Movant's claims that Counsel failed to discuss how the calculations in his Plea Agreement would affect the guideline range or the possibility of additional enhancements. The record also contradicts Movant's claims that Counsel failed to advise him of the sentencing exposure he was facing. As shown, Movant stated at his Change of Plea Hearing that he understood the various sentencing issues raised herein. Formal declarations in open court carry a strong presumption of truth. *Allison*, 431 U.S. at 74. Sworn, in-court, testimony at Movant's Change of Plea Hearing is strongly presumed to be truthful, especially in the face of his now self-serving rendition of the events that occurred. *See United States v. Crain,* 877 F.3d 637, 644 (5th Cir. 2017) ("'Solemn declarations in open court carry a strong presumption of verity[,]' and 'constitute a formidable barrier in [] subsequent collateral proceedings.'"). Additionally, the plea documents that Movant signed are afforded great evidentiary weight that may not easily be contradicted. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

In cases, such as this, where the record establishes that the defendant understood the nature of the charge against him and the direct consequences of his actions, the rudimentary demands of a fair proceeding and a knowing, voluntary plea are satisfied. *Wright*, 624 F.2d at 561. Movant fails

to show that he did not understand the nature of a constitutional protection that he was waiving or that he had "such an incomplete understanding of the charges against [him] that this plea cannot stand as an admission of guilt." *James*, 56 F.3d at 666. If a defendant understands the nature of the charges against him and the consequences of his plea, yet voluntarily chooses to plead guilty, the plea must be upheld on federal review. *Wilkes,* 20 F.3d at 653; *Diaz*, 718 F.2d at 1376-77. The Court concludes that Movant's guilty plea was knowing and voluntary, and must be upheld. Movant fails to show that, but for Counsel's alleged deficient performance, the outcome would have been different. *Strickland*, 466 U.S. at 694. Likewise, Movant fails to show that Counsel performed deficiently or that there is a reasonable probability that, but for Counsel's alleged deficient performance, he would not have pled guilty, and would have insisted on going to trial. *Lafler,* 566 U.S. at 162. This issue is meritless.

**B.**     ***Tapp* Issue and Evidentiary Hearing**

Movant asserts that he "asked" Counsel about appealing and that, had Counsel "explained to me the advantages and disadvantages of an appeal . . . [he] would have asked [Counsel] to file a notice of appeal on [his] behalf." Dkt. #1. An Evidentiary Hearing was held to determine whether Movant is entitled to relief in the form of an out-of-time appeal.

The Supreme Court held that, when an attorney fails to file a notice of appeal when requested to do so, the defendant need not demonstrate that he would have been able to raise meritorious issues on appeal to show that his attorney was ineffective. *Roe v. Flores-Ortega*, 528 U.S. 470, 477-78 (2000). More recently, the Fifth Circuit held that "if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed, and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver."

10

*United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). While Movant did not specifically assert that he asked Counsel to file an appeal, he challenged Counsel's level of meaningful consultation with him regarding an appeal.

The *Flores-Ortega* Court held that objectively reasonable performance requires counsel to consult with a defendant where "(1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. To establish prejudice, a movant must show that, but for counsel's deficient performance, he would have appealed. *Id*. at 484. A movant must present more than a generic statement as to his ignorance concerning the "advantages and disadvantages of an appeal. *United States v. Bejarano*, 751 F.3d 280, 287 (5th Cir. 2014).

    **1.    Testimony of Movant - Joseph Patrick Mosher**

Movant provided the following testimony when asked if there was anything he would have wanted to bring on appeal.

> Absolutely, I would have. Yes, we were attempting to get a downward departure and that was not granted. I asked after the sentencing, I turned to Mr. Kearney and I said, you know, "Am I able to appeal this?" And I was told basically that I could not afford the appeal. It would be very expensive, and that a judge is not likely to overturn another judge's decision anyway.

*See* Dkt.#14 at 10-11. Movant stated that he and Counsel were still in the District Court in Plano following sentencing when this conversation occurred. He said he asked Counsel if it was possible to move forward with an appeal. *Id.* at 12. Movant also said that Counsel did not discuss the strategy of Counsel filing a notice of appeal, followed by filing a motion to withdraw, and then Movant seeking appointment of counsel based on indigency. *Id.* at 13. Movant conceded that he nor his family contacted Counsel concerning an appeal. Movant said that Counsel did not say anything to him about the appellate process.

On cross examination, Movant clarified that "there was a cursory rushed reading of the Plea Agreement." *Id.* at 15. He also said that he did not recall the Court's questions or admonishments concerning the Plea Agreement during the Change of Plea Hearing. *Id.* He further said he did not remember reviewing the plea waiver with Counsel. Movant said that he had only a "brief curosry review" of the PSR. *Id.* at 16. Furthermore, he did not recall Judge Jordan reviewing the provisions of the PSR at his Sentencing Hearing. *Id.* Movant also said he did not recall Judge Jordan discussing his appellate rights. *Id.* at 22.

Movant conceded that an appeal was not part of his retention agreement with Counsel. He did not recall specifically asking Counsel to file a Notice of Appeal nor did he recall sending any letters to Counsel concerning an appeal. *Id.* at 18-19. Movant also conceded that, at his Restitution Hearing, which followed his Sentencing Hearing, he did not raise the issue of appealing the term of his sentence although he was once again in front of Judge Jordan. *Id.* He further conceded that he did not ask any questions concerning an appeal at any hearings. *Id.* at 20.

In response to the Court's questioning, Movant said there were no witnesses to the discussion with Counsel immediately following sentencing. At the Court's request, Movant read into the record the portion of his Plea Agreement concerning the District Court's discretion in sentencing and the waiver of right to appeal or otherwise challenge sentence. *Id.* at 24-26. Movant affirmed that it was his signature on the Plea Agreement, that he has advanced educational degrees, and that he continues to read and write in English. Movant claimed to not recall any discussion concerning the time limit for filing a notice of appeal. He also denied hearing Judge Jordan say that an attorney could be appointed on appeal if he could not afford one. *Id.* at 27-28.

### 2.     Testimony of Trial Counsel - Jeffrey Allen Kearney

Trial Counsel Jeffrey Allen Kearney, an attorney with fifty years of criminal defense experience, testified that he was retained to represent Movant in his criminal case. He said that, when presented with the Plea Agreement, he reviewed it with Movant paragraph by paragraph. *Id.* at 31. Counsel stated:

> Basically, I just walked him through, told him about the appellate process, basically, and that he needed to understand that by entering into this Plea Agreement he was waiving his right to appeal except for two limited areas. He would not be able to appeal his sentence if the Judge sentenced him within the statutory maximum, which the Judge did. And also, he wouldn't be able to appeal any other issue in the case other than ineffective assistance of counsel.

*Id.* at 32. Counsel said that Movant understood everything about the pros and cons of the Plea Agreement, noting that Movant is one of the most intelligent clients he has ever had. *Id.* at 33. "There's no question about him understanding every aspect of his case and what we were doing." *Id.* Counsel testified that Movant asked many questions, all of which Counsel answered. Counsel denied telling Movant that "he was going to die in federal prison if he didn't plead [guilty]." *Id.* He did, however, explain that under the Indictment, Movant was facing a possible ninety years maximum sentence, "and that certainly he wouldn't outlive that." *Id.*

Counsel testified he told Movant that if wanted to appeal an issue that was not waived, he would need to retain an attorney or file a Notice of Appeal. *Id.* at 34. Counsel said that Movant had no questions about the appellate process. Movant also had no concerns about the appellate waiver contained in his Plea Agreement. Counsel reviewed both the preliminary and final PSRs with Movant. Although Counsel made no promises, he filed a motion for a downward departure, which Judge Jordan denied. Counsel recalled how well Judge Jordan explained the waiver of appellate rights and what Movant would need to do to appeal. "It was a very detailed explanation." *Id.* at 37. The Judge

explained that he could have a court-appointed lawyer by applying for one. *Id.* at 38. Counsel did not believe Movant would have qualified for a court-appointed lawyer, however, because his financial assets were substantial. *Id.*

Counsel said that when discussing an appeal, he told Movant that he did not believe he had a non-frivolous issue to appeal. *Id.* at 38. However, Counsel told Movant that if he wanted to appeal, "we need to file Notice of Appeal within 14 days. I would be happy to file that . . . ." *Id.* "And I asked him to let my office know, either him or his mother, who communicated regularly with our office, to let us know if he wanted to file an appeal, and I would file the Notice of Appeal." *Id.* at 39. Counsel stated that Movant never asked him to file a Notice of Appeal. *Id.* Counsel also denied telling Movant that an appeal would be too expensive or that no judge would overturn another judge's sentence. *Id.* at 42. Counsel testified that, approximately one month after the Sentencing Hearing, he saw Movant at the Restitution Hearing, at which time Movant did not raise any concerns about his sentence and that he was pleased with the outcome of the Restitution Hearing. *Id.*

On cross-examination, Counsel reiterated that he explained to Movant about the appellate process, the rights he was waiving with the Plea Agreement, and that, although he waived contesting his sentence as long as it was within the statutory maximum, he could still file an appeal and "try to get the Fifth Circuit to consider his appellate issue." *Id.* at 45. Counsel also reiterated that he never said that one judge cannot overrule another judge. *Id.* at 47. He stated that Movant absolutely could have afforded to hire an attorney for an appeal. *Id.* Finally, when asked whether he mailed anything to Movant following sentencing, Counsel stated:

> No, I didn't mail him anything because his appellate rights had been explained to him by me in great detail and two different judges in great detail. So no, I didn't mail anything. He understood what he had to do. He had to notify me and I'd file a Notice

of Appeal within 14 days, and I asked him to do it within 10. And nobody ever notified our office that he wanted to pursue his appeal.

*Id.* at 47-48.

### 3. Findings and Conclusions

Movant conceded that he never asked Counsel to file an appeal on his behalf. His primary complaint is that he did not have a clear understanding of the Plea Agreement and that Counsel failed to properly consult him concerning the appellate process. Counsel testified that he discussed each and every paragraph of the Plea Agreement as well as the PSR with Movant. He testified that Movant was highly intelligent and that there was no question that Movant understood clearly. Counsel, with more than fifty years of criminal defense experience, testified he would have filed a Notice of Appeal had Movant asked.

Movant testified that he did not recall any of the Judges's admonishments. He said that he did not completely understand the Plea Agreement and that Counsel did not properly advise him of his appellate rights. Counsel's testimony directly conflicts with Movant's claims.

A review of the record shows that Movant was thoroughly advised concerning the Plea Agreement and his appellate rights. Counsel testified that he reviewed the waiver and the appellate process with Movant, as did the two judges. At his Change of Plea Hearing, the waiver was explained in great detail. Additionally, the record shows that one of the last things Judge Jordan said at Movant's Sentencing Hearing was that Movant had fourteen days to file an appeal, that the Clerk of Court would file a notice of appeal on his behalf if he wished, and that appellate counsel would be appointed if he was determined to be indigent. Crim. ECF #62 at 34-35. The Court finds Movant's numerous assertions that he either did not understand something or could not recall admonishments to be disingenuous. After reviewing the evidence in the record and evaluating the credibility of the witnesses

at the Evidentiary Hearing, the Court finds that Movant fails to meet his burden of showing by a preponderance of the evidence that Counsel failed to advise him concerning the Plea Agreement or of the advantages and disadvantages of filing an appeal. Movant fails to show Counsel was ineffective in this regard, or that he is entitled to an out-of-time appeal.

### IV. CONCLUSION

In conclusion, Movant fails to meet his burden in showing that Counsel's performance was deficient or that, but for Counsel's alleged deficient performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. He fails to show that, but for trial counsel's alleged deficient performance, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 57-59. He also fails to show that, but for counsel's alleged deficient performance, he would have appealed. *Flores-Ortega*, 528 U.S. at 484. Finally, Movant fails to show that he instructed Counsel to file an appeal or that Counsel failed to meaningfully consult with him concerning an appeal. *Tapp*, 491 F.3d 263, 266; *Bejarano*, 751 F.3d at 287. For these reasons, the motion should be denied.

### V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, it is recommended that the court, nonetheless, address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the court find Movant is not entitled to a certificate of appealability.

## VI. RECOMMENDATION

It is recommended the above-styled motion for relief under 28 U.S.C. § 2255 be denied and this case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's

report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 5th day of June, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE